LASZLO BIRO,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[1]

               Defendant.
_____

**DECISION AND ORDER**

6:17-CV-06098 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Laszlo Biro ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 12; Dkt. 16). For the reasons discussed below, Plaintiff's motion (Dkt. 12) is granted in part, the Commissioner's motion (Dkt. 16) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1]     As of the date of this Decision and Order, Nancy A. Berryhill, the Defendant named by Plaintiff in this matter, is no longer the Acting Commissioner of Social Security. No successor has been named in her place. The Clerk of Court is therefore instructed to substitute the "Commissioner of Social Security" as the Defendant, in accordance with Federal Rule of Civil Procedure 25(d).

## BACKGROUND

Plaintiff initially filed an application for SSI on March 29, 2007. (Dkt. 8-8 at 15).[2] This application was granted, and Plaintiff began receiving SSI benefits. (*Id.*). However, in 2009, Plaintiff was convicted of driving while intoxicated and incarcerated for approximately 18 months. (*Id.*). As a result of this incarceration, Plaintiff's SSI benefits were suspended. (*Id.*).[3]

Plaintiff protectively filed a new application for SSI on March 30, 2011, alleging disability from March 29, 2007, due to gout, severe lower back pain, hypertension, pancreatitis, and anxiety. (Dkt. 8-6 at 2-3). Plaintiff's application was initially denied on July 12, 2011. (Dkt. 8-4 at 2-5). At Plaintiff's request, a hearing on his claim was held before an administrative law judge ("ALJ"), and on September 26, 2012, the ALJ issued an unfavorable decision. (Dkt. 8-2 at 12-28). The Appeals Council denied Plaintiff's request for review on December 11, 2013 (*Id.* at 2-4), and an action was commenced in this court. *See* Civil Action No. 6:14-CV-06061. Pursuant to a stipulation between Plaintiff and the Commissioner, the court remanded the matter for further administrative proceedings. (Dkt. 8-9 at 27).

On remand, the Appeals Council vacated the Commissioner's prior decision and remanded the case to the ALJ to: (1) further develop the record regarding Plaintiff's

---

[2] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

[3] The Act "requires the termination of eligibility for SSI benefits after a claimant is ineligible for 12 consecutive months." *Singletary v. Astrue*, No. 11-CV-6055, 2012 WL 3204071, at *1 (W.D.N.Y. Aug. 3, 2012).

impairments; (2) give further consideration to treating and nontreating source opinions; and (3) further evaluate Plaintiff's subjective complaints in accordance with the applicable regulations. (*Id.* at 27-28).

A remand hearing was held before ALJ John P. Ramos on January 26, 2016. (Dkt. 8-8 at 78-118). On April 18, 2016, ALJ Ramos issued an unfavorable decision. (*Id.* at 14-48). The Appeals Council declined to assume jurisdiction, rendering ALJ Ramos' decision the Commissioner's final determination. (*Id.* at 2).

## LEGAL STANDARD

I. **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 30, 2011, the alleged onset date. (Dkt. 8-8 at 18).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left knee, history of gout, asthma, and panic disorder with agoraphobia. (*Id.*). The ALJ further found that Plaintiff had the non-severe impairments of hypertension,

hyperlipidemia, duodenal cancer, pancreatitis, digestive disorders, and obesity. (*Id.* at 19-20). The ALJ also concluded that Plaintiff's claimed enlarged liver and borderline diabetes did not constitute medically determinable impairments. (*Id.* at 21).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 25-26). The ALJ particularly considered the criteria of Listings 1.02, 1.03, 1.04, 12.02, 12.04, 12.06, 12.09, and 14.09 in reaching his conclusion. (*Id.* at 21-22).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 416.967(a), with the additional limitations that Plaintiff:

> should avoid frequent pushing and pulling with either upper extremity; can occasionally perform postural activities, such as bending, stooping, kneeling, crouching, and crawling; may need the use of a cane to ambulate, but retains the ability to carry small objects such as files in his free hand; and should avoid exposure to concentrated respiratory irritants or extremes of temperature. The claimant also retains the ability to understand and follow simple instructions and directions; can perform simple tasks with supervision and independently; can maintain attention/concentration for simple tasks; can regularly attend to a routine and maintain a schedule; can relate to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interaction or joint efforts with others to achieve work goals and should not have interaction with the public; and can handle reasonable levels of simple work-related stress in that he can make simple decisions directly related to the completion of his tasks, work in a position where he is not responsible for the work of others, and in work that involves little change in daily routine, work duties, or processes.

(*Id.* at 24). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 39).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could

perform, including the representative occupations of document preparer, addresser, and touch-up screener. (*Id.* at 39-41). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 41-42).

II. **Remand of this Matter for Further Proceedings is Necessary**

Plaintiff asks the Court to reverse the Commissioner's decision, arguing that: (1) the ALJ's RFC finding was unsupported by substantial evidence, because the ALJ relied upon a medical opinion predating Plaintiff's 2013 knee injury; and (2) the ALJ improperly relied on a questionnaire completed in 2011 in assessing the credibility of Plaintiff's subjective complaints. For the reasons set forth below, the Court finds that the ALJ's assessment of Plaintiff's RFC was unsupported by substantial evidence and that this error necessitates remand for further administrative proceedings.

A. **Assessment of Plaintiff's RFC**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "[A]s a result[,] an ALJ's determination of RFC

without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

Of particular relevance to this case, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age. *See Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of . . . [the] opinions such that they were rendered stale or incomplete").

Here, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because it was based on the stale medical opinion of consultative examiner Dr. Harbinder Toor and otherwise unsupported by any competent medical opinion. The Court agrees, for the reasons discussed below.

Dr. Toor examined Plaintiff on June 21, 2011, shortly after his application was filed and nearly five years before the ALJ issued his decision. (Dkt. 8-7 at 182-85). Dr. Toor performed a physical examination of Plaintiff, during which Plaintiff had a normal gait and stance, used no assistive devices, and was able to rise from a chair without difficult. (*Id.*

at 183). Plaintiff did have slight difficulty getting on and off the examination table and walking on his heels and toes, and was able to squat to only 50% of full. (*Id.*). Plaintiff had slight discomfort in his knees bilaterally, but exhibited a full range of motion. (*Id.* at 184). Based on this examination, Dr. Toor opined that Plaintiff had "moderate" limitations in standing, walking, sitting, bending, lifting, pushing, and pulling. (*Id.* at 185).

More than two years after Dr. Toor's examination, in September 2013, Plaintiff twisted his left knee and fell. (*See* Dkt. 8-13 at 237). Plaintiff was determined to have a tear of the medial cartilage or meniscus of his left knee and underwent a left knee arthroscopy on October 17, 2013. (*Id.* at 108-110). Plaintiff continued to suffer left knee pain in 2013 and 2014. (*See, e.g.,* Dkt. 8-14 at 47, 66). In July 2014, he reported that he had experienced only a 50% improvement in his symptoms since his surgery. (*Id.* at 66).

In August 2014, Plaintiff was instructed to begin wearing a left knee brace. (*Id.* at 78). Plaintiff's treating physician's assistant noted that Plaintiff might require a total knee replacement if his symptom continued to worsen. (*Id.*).

In November 2015, Plaintiff again complained of significant left knee pain and asked his treatment providers about possible options to alleviate it. (*Id.* at 127). An x-ray of Plaintiff's left knee was taken and showed tricompartmental joint disease, most advanced in the medial compartment, and a small effusion. (*Id.* at 108). On December 20, 2015, Plaintiff reported to his physician that his knee pain continued to worsen and that he was experiencing swelling, occasional popping, and clicking. (*Id.* at 151). On examination, Plaintiff had a limited range of motion in his left knee, with positive pain and crepitus on patellofemoral grind testing and positive pain over the patellar tendon. (*Id.* at

152). Plaintiff declined further conservative care and expressed interest in a second arthroscopy. (*Id.* at 153).

A second arthroscopy was performed on Plaintiff's left knee on January 21, 2016. (*Id.* at 207-208). Plaintiff's post-operative diagnoses were chondral defect medial femoral condyle, posterior horn root tear lateral meniscus, lateral osteophyte in notch causing impingement, and patellofemoral degenerative changes. (*Id.* at 207). In February 2016, Plaintiff reported he was continuing to experience knee pain post-surgery. (*Id.* at 172).

In assessing Plaintiff's RFC, the ALJ accorded "significant weight" to Dr. Toor's 2011 opinion, stating that it was "generally supported by the objective medical evidence[.]" (Dkt. 8-8 at 30). The ALJ acknowledged that there had been a "worsening of [Plaintiff's] left knee disorder following an injury in September 2013," but concluded that "greater exertional and non-exertional limitations [than identified by Dr. Toor] are not supported by the objective clinical and laboratory findings from various treating and examining sources." (*Id.*).

The Court finds the ALJ's consideration of Plaintiff's knee impairment unsupported by substantial evidence. First, Dr. Toor's opinion, which was rendered nearly five years before the ALJ's decision and before Plaintiff's September 2013 knee injury and two subsequent surgeries, was stale and not based on the complete medical record. *See, e.g., Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) ("[A]s the ALJ pointed out himself, Dr. Miller's opinion was rendered before [the plaintiff's] ankle surgery and therefore does not account for his deteriorating condition. A stale medical opinion, like one that is rendered before a surgery,

is not substantial evidence to support an ALJ's finding.") (citations omitted); *Girolamo v. Colvin*, No. 13-CV-06309 MAT, 2014 WL 2207993, at *8 (W.D.N.Y. May 28, 2014) (ALJ erred in assigning "great weight" to medical source statement that was "based on an incomplete record" because it was rendered before the plaintiff's "surgery and related diagnostic testing"). Accordingly, Dr. Toor's opinion cannot provide substantial evidence for the ALJ's findings.

The ALJ also did not rely on any other competent medical opinion in considering Plaintiff's left knee condition. Only two opinions of record were issued after Plaintiff's September 2013 injury. First, nurse practitioner ("NP") Aileen Colunio issued an opinion on February 12, 2016, stating that she had "never been provided medical evidence that would suggest [Plaintiff] is disabled." (Dkt. 8-13 at 305-306). However, NP Colunio, who worked for a pain management clinic, acknowledged that she had not treated Plaintiff for his knee and ankle pain. (*Id.* at 305). Accordingly, NP Colunio's opinion does not provide any meaningful information regarding the impact of Plaintiff's knee condition on his functional limitations. Second, physician's assistant Diane Legendre issued an opinion on September 15, 2014, in which she stated that Plaintiff's conditions, which were chronic and not expected to improve, prevented him from working. (*Id.* at 227). The ALJ gave this opinion "little weight," stating that it was not supported by the clinical findings of record. (Dkt. 8-8 at 32). It is therefore clear that the ALJ could not have relied on either of these opinions in assessing Plaintiff's RFC in light of his worsening left knee symptoms.

Defendant contends that the ALJ's RFC finding was supported by the "voluminous medical record," including "extensive progress notes" and "diagnostic testing." (Dkt. 16 at

27). However, as the Court noted above, an ALJ may not "ma[ke] an RFC determination in the absence of supporting expert medical opinion[.]" *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 271 (E.D.N.Y. 2015) (quotation omitted). This is not a case in which Plaintiff had only minor impairments such that the ALJ "was within [his] discretion to make a 'common sense judgment' concerning [Plaintiff's] limitations, and no medical opinion evidence was necessary." *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018). As detailed above, Plaintiff's knee impairment, as exacerbated by his September 2013 injury, was sufficiently severe that it necessitated two surgeries. Under these circumstances, it was necessary for the ALJ to rely upon a medical source's opinion in considering the limitations, if any, associated with this impairment. *See Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) (ALJ cannot render a common-sense judgment about a claimant's functional capacity where the record "contain[s] complex medical findings and do[es] not suggest only minor impairment).

Because the ALJ in this matter failed to rely on any competent medical opinion in assessing Plaintiff's RFC following his September 2013 knee injury and subsequent surgeries, his decision was unsupported by substantial evidence. Remand of this matter for further administrative proceedings, during which the record can be appropriately developed (including by obtaining an updated function-by-function medical assessment of Plaintiff), is necessary.

B.  **Plaintiff's Remaining Argument**

Plaintiff also argues that the ALJ improperly relied on a questionnaire from 2011 in assessing the credibility of his subjective complaints. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13 CIV. 06844 LGS DF, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 16) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 28, 2018
      Rochester, New York